IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

MARCUS A. JONES                      \*
                                                      \*
v.                                       \*   Civil No. JKS-09-583
                                                      \*
**MICHAEL J. ASTRUE**           \*
**Commissioner of Social Security**   \*
                                                      \*

## MEMORANDUM OPINION

Plaintiff Marcus A. Jones brought this action pursuant to 42 U.S.C. § 405(g) for review of a final decision of the Commissioner of Social Security (Commissioner) denying his claim for supplemental security income (SSI) under the Social Security Act, 41 U.S.C. §§ 401–433 (the Act). Both parties' motions for summary judgment and Jones' alternative motion for remand are ready for resolution and no hearing is deemed necessary. *See* Local Rule 105.6. For the reasons set forth below, Jones' motion for summary judgment and remand will be denied, and the Commissioner's motion for summary judgment will be granted.

### 1. Background.

Jones applied for SSI benefits on September 30, 2003, alleging an onset date of August 27, 1998. His application was denied initially on March 9, 2004, and upon reconsideration on February 15, 2006. An Administrative Law Judge (ALJ) held a hearing on July 18, 2007, at which Jones was represented by counsel. On January 25, 2008, the ALJ found that Jones was not disabled within the meaning of the Act, (R. 13), and on January 9, 2009, the Appeals Council denied his request for review, (R. 5). Thus, the ALJ's determination became the Commissioner's final decision.

**2. ALJ's Decision.**

The ALJ evaluated Jones' claim using the five-step sequential process set forth in 20 C.F.R. § 404.1520. First, the ALJ determined that Jones has not engaged in substantial gainful activity since the application date. At step two, the ALJ concluded that Jones suffers from Affective Disorder and Human Immunodeficiency Virus (HIV). (R. 18). At step three the ALJ determined that Jones does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix. (R. 18–20). At step four, the ALJ found that Jones has the Residual Functional Capacity (RFC) to perform light work with an at will sit/stand option and limited to routine, repetitive simple tasks, with minimal interaction with others, and Jones should only occasionally climb balance, stoop, kneel, crouch, and crawl. (R. 20). Once determining that Jones was unable to perform past relevant work, the ALJ found at step five, based on testimony from a vocational expert (VE) that jobs exist in significant numbers in the national economy that he can perform. (R. 26–27). As a result, the ALJ determined that Jones was not disabled with the meaning of the Act. (R. 27).

**3. Standard of Review.**

The role of this court on review is to determine whether substantial evidence supports the Commissioner's decision and whether the Commissioner applied the correct legal standards. 42 U.S.C. § 405(g); *Pass v. Chater*, 65 F.3d 1200, 1202 (4th Cir. 1995). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consolidated Edison Co, v. NLRB*, 305 U.S. 197, 229 (1938)). It is more than a scintilla, but less than a preponderance, of the evidence presented. *Shively v. Heckler*, 739 F.2d 987, 989 (4th Cir. 1984). It is such evidence that a reasonable mind might accept to support a conclusion, and must be sufficient to justify a

refusal to direct a verdict if the case were before a jury. *Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990). This court cannot try the case *de novo* or resolve evidentiary conflicts, but rather must affirm a decision supported by substantial evidence. *Id.*

**4. Discussion.**

A. The ALJ properly evaluated whether Jones met the criteria of listing 12.04 Affective Disorder and Listing 12.08 Personality Disorder.

Jones argues that the ALJ should have found that he meets the criteria for listing 12.04, Affective Disorder, and/or Listing 12.08, Personality Disorder. An affective disorder is "characterized by a disturbance of mood, accompanied by a full or partial manic or depressive syndrome." *See* 20 C.F.R. Part 404 Subpart P, Appendix 1, Section 12.04. "A personality disorder exists when personality traits are inflexible and maladaptive and cause either significant impairment in social or occupational functioning or subjective distress." *See* 20 C.F.R. Part 404, Subpart P, Appendix 1, Section 12.08. To meet or medically equal listing 12.04, a claimant must satisfy the requirements of both "paragraph A" and "paragraph B" or "paragraph C." To meet or medically equal listing 12.08, a claimant must satisfy the requirements of both "paragraph A" and "paragraph B."

The ALJ found that although Jones suffered from an affective disorder, he did not satisfy the "paragraph B" criteria[1] by showing that his mental impairment resulted in at least two of the required elements. (R. 19). Specifically, the ALJ found that Jones had only a mild restriction in activities of daily living, moderate difficulties in social functioning, moderate difficulties with regard to concentration, persistence, or pace, and no episodes of decompensation.

Substantial evidence supports the ALJ's conclusion that Jones' impairments do not equal the paragraph "B" criteria. Jones argues that the ALJ failed to give sufficient weight to his past

---
[1] The "paragraph B" criteria for Section 12.08 are the same as for Section 12.04.

as a victim of sexual abuse and HIV discrimination, poor sleeping and social functioning, and his inability to get along with coworkers and managers. (R. 109, 113, 117, 156, 164). The ALJ, however, noted that even though Jones alleges that he did not like being around others and tends to stay home, his family regularly visits him, he talks on the phone, and goes out shopping. (R. 19, 82-25, 93, Ex. 2F, 4F, 15F). In addition, Dr. Mikhael Taller reported that Jones usually relates to his supervisors and coworkers when he has a job. (R. 395). Jones also argues that the ALJ did not give sufficient weight to his concentration difficulties, including his inability to spell "world" backward with Dr. Taller, and "house" backward with Dr. Shah. The ALJ, however, considered the reports stating that Jones was capable of understanding and following simple instructions, and he noted that Jones regularly watched television and DVDs, played video games, and reads. (R. 19, 83-84, 521, 1394). As a result, substantial evidence supports the ALJ's decision that Jones did not meet or medically equal the criteria of paragraph "B" for listings 12.04 and 12.08.

Substantial evidence also supports the finding that the paragraph "C" criteria under listing 12.04 are not met. The ALJ noted that Jones lives alone and takes care of his personal needs. (R. 19, 94-100, 394).

  B. The ALJ properly evaluated whether Jones' multiple impairments equaled a listing.

Jones next argues that the ALJ failed to properly consider the combined effects of all of his impairments under 20 C.F.R. § 404.1523, claiming that this provision substantially lowers the threshold for establishing disability. However, while Section 404.1523 requires consideration of multiple impairments that if considered alone would not be of sufficient severity, the ALJ still must find that the combination of multiple impairments reaches sufficient medical severity to be the basis of eligibility under the law. The ALJ fully considered Jones' combination of these

impairments and symptoms which he found to be supported by the evidence. *See Ketcher v. Apfel*, 68 F. Supp. 2d 629, 645 (D. Md. 1999). The ALJ concluded that Jones' HIV status and mental impairments did not satisfy the requirements for listing level severity. (R. 18–19). The ALJ also concluded that Jones' combination of impairments does not meet or medically equal one of the listed impairments. (R. 18). The ALJ explained the basis of this opinion when discussing the RFC finding, which incorporates the combined effects of Jones' mental and physical limitations.

Jones argues that his impairments include depression, anxiety, personality disorder, HIV, a weakened immune system, back injury, and medication side effects. The ALJ considered each of these impairments. First, the ALJ concluded that the objective medical evidence did not support Jones' statements concerning the intensity, persistence and limiting effects of his depressive symptoms. (R. 21). Jones argues that the ALJ failed to adequately consider the opinions of his treating physicians, Drs. White, Jensen and Mowatt, in reaching this decision. The ALJ, however, fully considered and discounted these physicians' opinions. Specifically, the ALJ noted that although Jones was diagnosed with Depressive disorder, he was discharged from therapy for non-attendance, and in later follow-up notes, doctors found that Jones had good eye contact, was in high spirits, and was not having problems with depression. (R. 21, 103-17, 122, 127–34). The ALJ also accorded no weight to Dr. Jensen's opinion that Jones was disabled because it lacked supporting explanation or rationale and was inconsistent with Dr. Jensen's treatment notes and results. (R. 24). Similarly, Dr. Mowatt's examination revealed that Jones had "good eye contact, normal and coherent speech, linear and goal directed through process, euthymic mood and affect, intact cognition, unimpaired insight and judgment," and no suicidal plans. (R. 22, 156–58).

The ALJ also considered Jones' HIV diagnosis, noting that as of 2003, Jones did not need antiviral medication, his T-cell count was improving, and his gait and grip strength were normal. (R. 23, 105, 126, 132, 137, 161-62, 288, Exs. 1F, 15F). Third, other than isolated instances of feeling sick over a three year period, Jones has maintained his weight and remained stable. (R. 23, 314-87). Fourth, the ALJ considered and rejected Jones' back injury as a disability impairment because the record reflects that Jones' spine had no evidence of fracture, dislocation, or acute traumatic injury, and had improved through therapy. (R. 18, 238).

Jones also argues that the ALJ failed to fully consider and give adequate weight to the side effects of his medication. Jones has failed to provide any evidence of medication side effects other than one notation in a report by Dr Shah. (R. 168). Jones claims that Drs. Taller and Uberoi did not fully evaluate these side effects because neither doctor made any notes about them. The absence of notes, however, tends to negate, not prove, the existence of serious side effects. Dr. Shah's one notation, without more, is not sufficient to require a finding that Jones' side effects from medication constitute an impairment. *See Ketcher*, 68 F. Supp. 2d at 1074 (noting that the ALJ must only consider those impairments and symptoms for which ample supporting evidence exists).

C. The ALJ properly considered the VE's Testimony.

Jones argues that the ALJ did not include all of his impairments when presenting his hypothetical to the VE. He claims that the ALJ should have given more weight to the questions Jones' representative posed to the VE, which included the need to lie down five times a day, absenteeism, being uncomfortable around others in the workplace, and concentration problems. (*See* R. 530–34). The VE opined that there would not be sufficient number of jobs in the national economy for a hypothetical person with these symptoms and limitations.

6

The ALJ's hypothetical question to the VE must include all of the claimant's impairments. *Walker v. Bowen,* 889 F.2d 47, 50 (4th Cir. 1989). The question, however, must include only those limitations that the ALJ deems credible. *See English v. Shalala,* 10 F.3d 1080, 1085 (4th Cir. 1993). Here, the ALJ asked the VE to assume a hypothetic individual with Jones' age, education, and past work experience, the exertional capacity of 20 pounds occasionally and 10 pounds frequently, occasional non-exertional postural limitations, a sit-stand option, and only routine, repetitive, and simple tasks with minimal interaction with others. (R. 529-30). Those limitations are the ones that the ALJ determined were applicable to Jones. (R. 25-26). The VE found that this hypothetical person could perform the requirements of mail sorter, sodderer, and assembler. (R. 529–30). The ALJ properly accepted the VE's testimony because it included all of the limitations which Jones had.

D. The ALJ properly considered Jones' earning history.

At step one of the five-step sequential process an individual must demonstrate that he has not engaged in substantial gainful activity (SGA) since the onset date. *See* 20 C.F.R. § 416.920(b). Here, the ALJ found in Jones' favor that he had not engaged in SGA. (R. 18). Jones now argues, without any supporting authority, that the fact he has not engaged in SGA is evidence that his psychological and physical impairments are debilitating. Not engaging in SGA, however, is not evidence of a disability, and is appropriately considered only at step one of the process.

E. The ALJ properly considered the opinions of Jones' treating and consultative physicians.

Jones argues that the ALJ accorded improper weight to the opinions of consultative physicians, Drs. Taller and Shah, and also that the ALJ did not afford proper weight to certain information in their reports. He also argues that the ALJ erroneously did not accord controlling

7

weight to his treating psychiatrist, Dr. Jensen.

An ALJ must always consider the medical opinions in a claimant's case record together with the rest of the relevant evidence. 20 C.F.R. § 416.927(b). While the ALJ must generally give more weight to a treating physician's opinion, *see* 20 C.F.R. §§ 404.1527(d)(2) and 416.927(d)(2), where a treating physician's opinion is not supported by clinical evidence or is inconsistent with other substantial evidence, it should be accorded significantly less weight. *Craig v. Chater*, 76 F.3d 585, 590 (4th Cir. 1996). The ALJ is not required to give controlling weight to a treating physician's opinion on the ultimate issue of disability. 20 C.F.R. § 404.1527(e); SSR 96-5p.

Here, the ALJ disregarded Dr. Jensen's opinion on the issue of disability as purely conclusory and lacking supporting explanation or rationale. (R. 24). The ALJ also found that Dr. Jensen's evaluation of Jones' impairments was not well supported and was inconsistent with the overall record. The ALJ noted that Dr. Jensen's opinion was inconsistent with his treatment notes, which were "essentially normal with only depressed and sad mood," and occasional suicidal ideation with no plans or intent. (R. 24, R. 240-46). In addition, the ALJ noted that Dr. Jensen's findings were also inconsistent with Jones' Global Assessment of Functioning score of 60, which calls for only moderate limitations. (R. 24–25). In addition, Dr. Jensen's statement that Jones had changes in weight, demonstrated psychomotor retardation, and had nightmares and night sweats, (R. 282), were not supported by the treatment notes.

The medical opinions of Drs. Taller and Shah also contradict Dr. Jensen's conclusions. The ALJ recognized that Dr. Taller found that Jones had moderate limitations concerning his ability to interact with supervisors and co-workers and mild limitations concerning his ability to interact with the general public. (R. 25, 397–98). Dr. Taller also found that Jones had a mild

8

impairment in the ability to make judgments on complex work-related decisions and had no impairment of his ability to understand, remember, and carry out simple and complex instructions. (*Id.*). Dr. Shah also found that Jones could understand and follow simple instructions independently. (R. 25, 168). The ALJ recognized that Drs. Taller and Shah were consultative examiners, who only met with Jones on one occasion. (R. 25). Jones cites to several alleged inaccuracies and inadequacies in Drs. Taller and Shah's examinations, but his affidavit provides no basis for discounting their opinions. The ALJ properly found their opinions consistent with and supported by the record, and thus appropriately gave them significant weight. (*Id.*).

    F. The ALJ adequately developed the record.

Jones' last contention is that the ALJ failed to fully develop the record. He specifically faults the ALJ for not obtaining a listing questionnaire report by Dr. Mowatt. Admitting that this report was absent due to a clerical error by his counsel's office, he argues that the ALJ should have requested the report. Jones claims that this report is extremely important because it was completed by his treating psychiatrist and is consistent with Dr. Jensen's opinions. The Commissioner responds by noting that the ALJ had substantial evidence on the record to evaluate Jones' disability.

A claimant bears the primary responsibility for presenting evidence that establishes his disability. *See Bowen v. Yuckert*, 482 U.S. 137, 146, n.5 (1987); 20 C.F.R. § 404.1512(a), (c). However, the ALJ also has a duty to ensure that the record is fully and fairly developed prior to making a determination regarding the individual's disability. *See, e.g., Cook v. Heckler*, 783 F.2d 1168, 1173 (4th Cir. 1986). This duty is somewhat relaxed when, as here, the claimant is represented by counsel. In such a case, the ALJ ordinarily is entitled to rely on counsel to

structure and adequately explore the claims. *Hawkins v. Chater*, 113 F.3d 1162, 1167-68 (10th Cir. 1997).

Here, the ALJ fully and fairly developed the record. He considered the extensive medical records from Chase Brexton Health Services, including the opinion of Dr. White. (R. 21–22). He also considered extensive records of Dr. Jensen, records of Drs. Uberoi, McLenoth, and Mowatt, and the evaluations of Drs. Shah, and Taller. (R. 22–23). The ALJ obtained updated medical information from Dr. Taller after the hearing, but before the final decision. (R. 388-99). Although the ALJ did not obtain the listings questionnaire completed by Dr. Mowatt, sufficient evidence existed to reach a decision on Jones' disability.

In any event, the failure to obtain the listing questionnaire, did not prejudice Jones. *See Marsh v. Harris*, 632 F.2d 296, 300 (4th Cir. 1980) (noting that the case should be remanded if the ALJ failed to adequately develop the record and that failure prejudiced the claimant). Dr. Mowatt's report was fully considered. (R. 22). It was produced almost three years before the ALJ's decision, and the questionnaire was, like Dr. Jensen's, contradictory and not supported by the GAF score of 60 or the written report. As previously discussed, a GAF score of 60 provides for only moderate limitations. (R. 24–25).

### 5. **Conclusion.**

For the foregoing reasons, Jones' motion for summary judgment and remand will be denied, and the Commissioner's motion for summary judgment will be granted.

Date: March 7, 2011            /S/
                    JILLYN K. SCHULZE
                    United States Magistrate Judge